## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOSEPH K. BOLFA**                    **CIVIL ACTION**

**VERSUS**                            **NO: 10-714**

**OFFSHORE MARINE**                   **SECTION: "S" (1)**
**CONTRACTORS, INC., ET AL.**

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #52)

is **GRANTED** as unopposed as to plaintiff's Louisiana state law claims, and those claims are

**DISMISSED WITH PREJUDICE**.  The motion is **DENIED** as to plaintiff's claims under the

Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b).

### BACKGROUND

Plaintiff, Joseph K. Bolfa, filed this suit against Offshore Marine, Inc. ("OM"), Offshore

Marine Contractors, Inc. ("OMC"), and Energy Partners of Delaware, Ltd. ("Energy Partners")

alleging claims under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et

seq., the general maritime law, and Louisiana law.  Plaintiff alleges that on April 11, 2009, he was

struck in the head by the headache ball of a crane that was an appurtenance of the L/B NICOLE

EYMARD.[1]  Plaintiff contends that he was hosing cement off the vessel's deck and when the

accident occurred.

---

[1] Plaintiff alleges that the vessel involved in the incident was the M/V KATHRYN EYMARD. In its
Answer to plaintiff's complaint, OM states that the M/V KATHRYN EYMARD's records do not indicate
that plaintiff ever boarded that vessel, and that the vessel involved in the incident was the L/B NICOLE
EYMARD.  Plaintiff does not dispute this fact.

At the time of the accident, plaintiff was employed as a rigger by Knight Well Services, Inc., which was contracted by Energy Partners to assist in the plug and abandon operations of an Energy Partners' well located in the Gulf of Mexico off the coast of Louisiana.  Plaintiff alleges that Energy Partners contracted with OM and OMC to provide the L/B NICOLE EYMARD and her crew to assist in the plug and abandon operations.  Plaintiff contends that defendants' employees were present on the L/B NICOLE EYMARD, and maintained control of the vessel, particularly the vessel's cranes, during the plug and abandon operations.

Defendants filed a motion for summary judgment arguing that Louisiana law does not apply[2], and that they did not breach a duty owed to plaintiff under § 905(b) because the headache ball was an open and obvious condition.  They argue that, because plaintiff testified that he knew about the headache ball prior to the accident and it was painted yellow, that they did not have a duty to warn plaintiff of the condition.  Defendants argue that plaintiff's carelessness caused the accident.

Plaintiff argues that defendants mischaracterize his testimony.  Specifically, he contends that he did not run into the headache ball, rather that it was swinging and hit him.  He claims that he the ball threw him eight to ten feet onto one of the vessel's vents.  Also, he argues that defendants breached their duty to exercise due care to protect the longshoremen from the headache ball because defendants maintained active control of the vessel, particularly the cranes.  Plaintiff argues that he informed the vessel's captain about the swinging headache ball, and that the captain told him not to touch it, that the captain would look into it.  Plaintiff also argues that summary judgment is

---

[2] Plaintiff agrees that Louisiana law does not apply to this matter.  Thus, defendants' motion for summary judgment is GRANTED as to plaintiff's Louisiana law claims, and those claims are DISMISSED WITH PREJUDICE.

premature because discovery is in its early stages, and he is the only person that has been deposed in this matter.

## ANALYSIS

**A.      Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.      Defendants' Motion for Summary Judgment**

Plaintiff was a longshoreman, and he alleges claims against defendants as vessel owners. Section 905(b) of the LHWCA grants longshoremen an exclusive remedy against a "vessel" for injured caused by the negligence of the "vessel." See 33 U.S.C. § 905(b); see also McLaurin v. Noble Drilling (US), Inc., 529 F.3d 285, 289 (5th Cir. 2008).

In <u>Scindia Steam Navigation Co. v. DeLosSantos</u>, 101 S.Ct. 1614 (1981), the Supreme Court of the United States defined the vessel's duty to longshoremen. The United States Court of Appeals for the Fifth Circuit has extended the rationale of <u>Scindia</u> to any independent contractor working aboard the vessel. <u>See</u> <u>Casaceli v. Martech Int'l, Inc.</u>, 774 F.2d 1322, 1326-27 (5th Cir. 1985). <u>Scindia</u> provides as follows:

> The vessel owner must provide work space, ship's gear, equipment, and tools in a condition that allows an [independent contractor], acting with reasonable care, to carry on his operations with reasonable safety. The owner must warn the [independent contractor] of any hidden dangers which the owner knows or should know about in the exercise of reasonable care. The owner need not supervise, inspect, or monitor the . . . operations for dangerous conditions that develop during that process unless required to do so by contract, positive law, or custom. He may generally rely on the [independent contractor's] exercise of reasonable care. An exception to this lack of supervisory duty exists if the shipowner becomes aware of a dangerous condition in the ship's gear during the . . . operation, and is also aware that the [contractor] is unreasonably failing to protect [the employee] against this danger. The shipowner then has a duty to intervene and repair the gear constituting the danger.

<u>Id.</u> at 1326 (citing <u>Scindia</u>, 101 S.Ct. at 1621-26). These duties are known as the "turnover duty," the "active control of the vessel," and the "duty to intervene." <u>Howlett v. Birksdale Shipping Co., S.A.</u>, 114 S.Ct. 2057, 2065 (1994).

**A.      Turnover Duty**

The turnover duty does not apply in this matter because the vessel was not turned over to Knight Well Services. Rather, Knight Well Services' employees worked along side of the vessel's crew, who were defendants' employees.

4

B.      **Active Control of the Vessel**

"It is also accepted that the vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoreman to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." Scindia, 101 S.Ct. at 1622; see also Manuel v. Cameron Offshore Boats, Inc., 103 F.3d 31, 34-35 (5th Cir.1997); Pimental v. LTD Canadian Pacific Bul, 965 F.2d 13, 16-17 (5th Cir.1992).  The United States Court of Appeals for the Fifth Circuit explains that the active control duty:

> recognizes that although a vessel owner no longer retains the primary responsibility for safety in a work area turned over to an independent contractor, no such cession results as relates to areas or *equipment* over which the vessel's crew retains operational control.

Manuel, 103 F.3d at 34 (emphasis added).

Plaintiff testified that he told the captain that he thought that the headache ball was dangerous and offered to fix it, to which the captain replied that only the vessel's crew could touch the cranes and that the captain would look into it.  This testimony demonstrates that defendants may have retained active control over the cranes such that they had a duty to exercise due care to avoid exposing longshoremen to hazards arising from that equipment.  Plaintiff is the only witness who has been deposed.  Therefore, there are outstanding issue of fact that are germane to the issue of defendants' exercise of active control over the cranes, and they are not entitled to summary judgment on this issue at this time.

C.      **Duty to Intervene**

The duty to intervene does not apply to this matter. A vessel owner has the duty to intervene in the stevedoring operations when it "has actual knowledge of a dangerous condition and actual knowledge that the stevedore, in the exercise of "obviously improvident judgment, has failed to remedy it." <u>Greenwood v. Societe Francaise</u>, 111 F.3d 1239, 1248 (5th Cir.1997). The shipowner's duty to intervene "is narrow and requires something more than mere shipowner knowledge of a dangerous condition." <u>Id.</u> at 1249 (citing <u>Singleton v. Guangzhou Ocean Shipping Co.</u>, 79 F.3d 26, 28 (5th Cir.1996)). "[F]or the expert stevedore's judgment to appear 'obviously improvident,' that expert stevedore must use an object with a defective condition that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm even when the stevedore's expertise is taken into account." <u>Id.</u>; <u>see also</u> <u>Moore v. M/V ANGELA</u>, 353 F.3d 376, 391-92 (5th Cir.2003).

Plaintiff testified that the Knight Well Services employees did not use the vessel's cranes in their operations, and that the captain specifically instructed him that he was not to touch the cranes. Thus, the allegedly dangerous condition did not arise during Knight Well Services' operations, and Knight Well Services was not using an object with a hazardous defective condition. Rather, plaintiff alleges that the hazardous condition arose from equipment that was under the defendants' control.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #52) is **GRANTED** as unopposed as to plaintiff's Louisiana state law claims, and those claims are

**DISMISSED WITH PREJUDICE**.  The motion is **DENIED** as to plaintiff's claims under the

Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b).


New Orleans, Louisiana, this __17th__ day of January, 2012.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**